Peter Romer-Friedman (*pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue NW,
Second Floor West Suite
Washington, D.C. 20001
Telephone:  (202) 847-4400
Facsimile:   (202) 847-4410
Email:        prf@outtengolden.com

Jahan C. Sagafi (Cal. Bar No. 224887)
Rachel W. Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:   (415) 638-8810
Email:        jsagafi@outtengolden.com
Email:        rdempsey@outtengolden.com

Thomas G. Jarrard (*pro hac vice*)
LAW OFFICE OF THOMAS JARRARD
PLLC
1020 N. Washington Street
Spokane, WA  99201
Telephone:  (425) 239-7290
Facsimile:   (509) 326-2932
Email:        Tjarrard@att.net

Matthew Z. Crotty (*pro hac vice*)
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Avenue, Suite 404
Spokane, WA 99201
Telephone:  (509) 850-7011
Email:        matt@crottyandson.com

*Attorneys for Plaintiff and Proposed Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JAYSON HUNTSMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO.,<br><br>Defendant. | Case No. 3:17-cv-03972-JD<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR ORDER CONDITIONALLY CERTIFYING SETTLEMENT CLASS AND GRANTING PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Judge:   James Donato<br>Hearing Date:  November 8, 2018<br>Hearing Time:  10 a.m.<br>Courtroom:      11 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on November 8, 2018, at 10 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11 on the 19th Floor of this Court's San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff Jayson Huntsman, individually and on behalf of all others similarly situated ("Plaintiff") will, and hereby does, move this Court for the following relief with respect to the Class Action Settlement Agreement, attached as Exhibit 3 to the Declaration of Peter Romer-Friedman in Support of Unopposed Motion for Conditional Certification of the Settlement Class and Preliminary Approval of Settlement, with Defendant Southwest Airlines, Co. ("SWA"):

1.      that the Court certify, for settlement purposes only, a settlement class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3);

2.      that the Court appoint Plaintiff as class representative of the Class;

3.      that the Court appoint Outten & Golden LLP as Lead Class Counsel and appoint the Law Office of Thomas Jarrard PLLC and Crotty & Son PLLC as Class Counsel;

4.      that the Court grant preliminary approval of the Settlement;

5.      that the Court approve mailing to the Class Members the proposed Class Notice;

6.      that the Court appoint Settlement Services, Inc. as the Settlement Administrator; and

7.      that the Court schedule a hearing for final approval of the Settlement.

This motion is made on the grounds that the Settlement is the product of arm's-length, good-faith negotiations; is fair, reasonable, and adequate to the Class; and should be preliminarily approved, as discussed in the attached memorandum.

The motion is based on this notice, the following memorandum in support of the motion, the Declaration of Peter Romer-Friedman (which annexes a copy of the Settlement); the Declaration of Thomas G. Jarrard; the Declaration of Matthew Crotty; the Court's record of this action; all matters of which the Court may take notice; and oral and documentary evidence presented at the hearing on the motion.  This motion is unopposed by SWA.

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................ 2

    A.    Factual Background ............................................................................ 2

        1.    Sick Leave Claim ................................................................. 2

        2.    Retirement Claim ................................................................. 3

    B.    Procedural Background ...................................................................... 4

    C.    Informal Discovery and Mediation ................................................... 4

    D.    The Settlement Class ......................................................................... 5

III.   THE PROPOSED SETTLEMENT ................................................................... 5

IV.   ARGUMENT .................................................................................................... 8

    A.    Certification of the Rule 23 Class Is Proper ..................................... 8

        1.    Rule 23(a) Is Satisfied. ........................................................ 8

        2.    Certification Is Proper Under Rule 23(b)(3). ...................... 9

        3.    Class Counsel Should Be Appointed. ................................ 11

    B.    Preliminary Approval Should be Granted. ...................................... 11

        1.    Plaintiff's Case Faced Significant Hurdles and Risk. ....... 12

        2.    The Settlement Amount Is Appropriate. ............................ 13

        3.    The Extent of Discovery Supports Settlement. ................. 14

    C.    The Proposed Notice Is Clear And Adequate. ............................... 14

V.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED. ................. 15

VI.   CONCLUSION .............................................................................................. 15

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Cases**                                                                                            **Page(s)**

3

*Abdullah v. U.S. Sec. Assocs.*,

4
   731 F.3d 952 (9th Cir. 2013) ................................................................................................ 8

5

*Betancourt v. Advantage Human Resourcing, Inc.*,
   No. 14 Civ. 01788, 2016 WL 344532 (N.D. Cal. Jan. 28, 2016) ............................................. 12

6

*Cabrera v. Perceptive Software, LLC*,

7
   147 F. Supp. 3d 1247 (D. Kan. 2015) ................................................................................ 11, 13

8

*Cancilla v. Ecolab, Inc.*,
   No. 12 Civ. 03001, 2015 WL 4760318 (N.D. Cal. Aug. 12, 2015).......................................... 9

9

10

*Cotter v. Lyft, Inc.*,
   176 F. Supp. 3d 930 (N.D. Cal. 2016) .................................................................................. 13

11

*Duffer v. United Cont'l Holdings, Inc.*,

12
   173 F. Supp. 3d 689 (N.D. Ill. 2016) .................................................................................... 12

13

*Fernandez v. Victoria Secret Stores, LLC*,
   No. 06 Civ. 04149, 2008 WL 8150856 (C.D. Cal. July 21, 2008) ........................................ 11

14

15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................................................... 9, 12

16

17

*In Re: Heritage Bond Litig.*,
   No. 02 ML 1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................... 14

18

*Jordan v. L.A. Cty.*,

19
   669 F.2d 1311 (9th Cir. 1982) .............................................................................................. 8

20

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) .............................................................................................. 10

21

*In re Mego Fin. Corp. Sec. Litig.*,

22
   213 F.3d 454 (9th Cir. 2000) .............................................................................................. 14

23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................................ 11

24

*In re Omnivision Techs., Inc.*,

25
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................................... 11, 12

26

*Pacheo v. JP Morgan Chase Bank, N.A.*,

27
   No. 15 Civ. 05689, 2017 WL 3335844 (N.D. Cal. Aug. 4, 2017)........................................ 8, 11

28

*Tierno v. Rite Aid Corp.*,
   No. 05 Civ. 02520, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) ........................................ 10

*Tuten v. United Airlines, Inc.*,
   41 F. Supp. 3d 1003 (D. Colo. 2014) ........................................................................................... 9

*Tuten v. United Airlines, Inc.*,
   No. 12 Civ. 1561, 2013 WL 8480458 (D. Colo. Oct. 31, 2013) ................................................ 9

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ........................................................................................................... 10

*Whiteway v. FedEx Kinko's Office & Print Servs.*,
   No. 05 Civ. 2320, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006) ............................................ 9

**Statutes**

38 U.S.C. § 4316 ........................................................................................................................... 3

38 U.S.C. § 4318 ........................................................................................................................... 3

38 U.S.C. § 4327 ......................................................................................................................... 13

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................. *passim*

**Regulations**

20 C.F.R. § 1002.150 ................................................................................................................... 3

<u>**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION**</u>

## I.      INTRODUCTION

Plaintiff Jayson Huntsman ("Plaintiff") and Southwest Airlines Co. ("SWA" or "Southwest") (collectively, the "Parties"), have executed a Settlement of the claims of Plaintiff and a class of 1,500 to 2,000 current and former SWA pilots who Plaintiff alleges were denied paid sick leave and matching retirement contributions for periods of military leave that lasted 14 days or less ("short-term military leave" or "STML") in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA").  Settlement Agreement ("Settlement"), Ex. 3 to Declaration of Peter Romer-Friedman in Support of Unopposed Motion for Conditional Certification of the Settlement Class and Preliminary Approval of Settlement ("PRF Decl.").

The Settlement provides Class Members who can use Southwest sick leave in the future an opportunity to receive 100% of the sick leave benefits they were allegedly denied between 2008 and the date of preliminary approval, and 77% of the average sick leave benefits they were allegedly denied between 2001 and 2007, at a value that Plaintiff estimates to exceed $13 million. The Settlement also creates a $5.8 million non-reversionary common fund to provide retirement benefits to Class Members for claims related to 401(k) payments from 2001 to 2013, and to make $1,000 payments to each Class Member who is no longer an SWA employee and cannot use SWA sick leave in the future, among other payments.  Furthermore, SWA will change its sick leave policy so that pilots accrue sick leave during STML moving forward, providing millions of dollars of future benefits to Class Members.  And Southwest will provide more information to SWA pilots about the retirement credit and contributions they receive for periods of STML.

Plaintiff and his counsel believe the excellent recovery and future policy changes make this Settlement an outstanding result, particularly given the major risks faced on liability and damages. The Class should be certified and the Settlement preliminarily approved as fair, reasonable, and adequate.  The Settlement is the product of arm's-length negotiations and falls within a range of reasonableness.  The proposed Notice gives Class Members the best notice practicable and a full and fair opportunity to evaluate the Settlement before deciding whether to participate.

- 1 -

II.     **BACKGROUND**

    A.     **Factual Background**

Plaintiff filed this putative class action alleging that SWA (1) violated USERRA, 38 U.S.C. § 4316, by failing to provide accrued paid sick leave to SWA pilots who took STML, even though SWA provided accrued paid sick leave to pilots who took other comparable forms of leave ("Sick Leave Claim"),[1] and (2) violated USERRA, 38 U.S.C. § 4318, by failing to match 401(k) contributions of pilots who took STML based on their "deemed earnings"—*i.e.*, the compensation they would have earned had they not taken STML—and by failing to give pilots the information they needed to determine their own deemed earnings for periods of STML ("Retirement Claim"). Complaint ¶ 2, ECF No. 1 ("Compl.").

        1.     **Sick Leave Claim**

Each month, SWA pilots bid on their flight schedules, which vary month-to-month. PRF Decl. ¶ 19. Pilots are compensated based on a unit called Trips For Pay ("TFP"), which roughly corresponds to a certain number of miles flown. *Id.* When a pilot does not fly TFPs he or she was scheduled to fly, the missed TFPs are called "dropped trips." *Id.* ¶ 20. Under the pilots' collective bargaining agreement with Southwest ("CBA"), pilots accrue paid sick leave at a rate of 1 TFP for every 10 TFP flown, up to a maximum of 1,600 TFP. *Id.* ¶ 21. Pursuant to the CBA, when pilots retire, they can trade accrued sick leave for continued coverage under SWA's health plan at a rate of 1 month of coverage per 10 TFP until they run out of accrued TFP or they turn 65. *Id.* ¶ 22. When non-retiring pilots terminate employment with SWA voluntarily or involuntarily, the CBA provides that their accrued sick leave is not paid out. *Id.*

Since 2001, SWA gave accrued sick leave to pilots who took leave for bereavement, union duty, and jury duty, but did not provide accrued sick leave to pilots who took STML. *Id.* ¶ 23. Plaintiff alleges that since SWA provides accrued sick leave to pilots who take comparable types of leave, USERRA § 4316 requires SWA to give accrued sick leave to pilots on STML.

---

[1] SWA pays pilots when they take sick leave they have accrued. PRF Decl. ¶ 21. All references herein to sick leave or accrued sick leave refer to paid sick leave.

Employees who take military leave are "entitled to" the same "rights and benefits" an employer

provides "to employees . . . who are on furlough or leave of absence."  38 U.S.C. § 4316(b)(1)(B);

*see* 20 C.F.R. § 1002.150(a).  SWA maintains that jury duty, bereavement and other forms of

leave in which sick leave accrues are not comparable to STML under USERRA.  PRF Decl. ¶ 23.

### 2.   **Retirement Claim**

Until December 31, 2016, SWA made matching contributions to pilots' 401(k) retirement

accounts as a benefit of employment.  PRF Decl. ¶ 24.  The maximum matching rate was 9.3% of

pilots' compensation from 2010 to 2016, 7.8% in 2009, and 7.3% from 1999 to 2008.  *Id.*  Each

pilot could get up to $25,000 of annual contributions from SWA.  *Id.* ¶ 25. Since 1994, USERRA

§ 4318 has mandated that employees who return from military leave be allowed to make and have

matched 401(k) contributions based on compensation they would have earned during military

leave (though they received no employer pay).  38 U.S.C. § 4318(b)(1)-(2).  For example, if a pilot

earned $150,000 in 2013 and took military leave for 14 days, during which he would have earned

$5,000 had he continued working, he would be entitled to have his 401(k) contributions matched

up to $14,415, or 9.3% of $155,000, rather than up to $13,950, or 9.3% of $150,000.

From 2001 to 2013, Plaintiffs allege SWA had a pattern or practice of refusing to tell SWA

pilots their deemed earnings for periods of STML, making it difficult-to-impossible for pilots—

whose pay varies week to week—to obtain information needed to make make-up contributions

and have SWA match them.  Compl. ¶ 51.[2]  Most pilots Plaintiff's counsel spoke with were

unaware they could make USERRA make-up contributions for STML.  PRF Decl. ¶ 26.  Plaintiff

and other pilots maintain that they were rebuffed in their efforts to get information on deemed

earnings and were told that SWA had no procedure to give them relevant information.  *Id.*; *see*

*also* Compl. ¶¶ 54-55.  SWA has maintained throughout the litigation that, under the CBA, the

---

[2] On January 1, 2014, SWA implemented a new system for calculating USERRA deemed earnings
for periods of STML.  PRF Decl. ¶ 28.  Since January 1, 2017, SWA has not made matching
contributions to pilots' retirement accounts, and instead makes an automatic, non-elective
contribution to all eligible pilots in the amount of 14.2% of the pilots' earnings (or deemed
earnings).  *Id.* ¶ 29.

401(k) Plan Administrator (*i.e.*, the pilot's union), not SWA, bore the responsibility for calculating deemed earnings for periods of STML, that the Plan Administrator was responsible for providing pilots with information as to USERRA make-up contributions, and that SWA's Human Resources department answered pilots' questions about their 401(k) contributions.  PRF Decl. ¶ 27.

### B.   Procedural Background

Plaintiff filed this action on July 14, 2017.  Compl.  On August 31, 2017, SWA moved to transfer venue.  ECF No. 18.  On September 15, 2017, the Parties agreed to stay the case after Plaintiff's Response to the transfer motion to allow them to explore settlement.  ECF No. 21.  The Court stayed the case on September 21, 2017.  ECF Nos. 22, 23.  The stay continued until September 5, 2018, as the Parties engaged in informal discovery and mediation.

### C.   Informal Discovery and Mediation

Between October 2017 and mid-June 2018, the Parties engaged in discovery.  PRF Decl. ¶ 32.  SWA produced voluminous personnel records for at least 800 Class Members who took STML between 2008 and 2013, and documents on SWA's policies on leave, retirement, wages, and scheduling.  *Id.* ¶ 32.B.  Thereafter, Plaintiff's counsel and their damages analyst evaluated the documents, policies, and data, and developed models to calculate potential losses for the Retirement and Sick Leave Claims.  *Id.* ¶ 32.D.  Prior to mediation, the Parties' counsel routinely conferred over the discovery, the need to produce additional data, and the Parties' competing loss estimates.  *Id.* ¶ 32.C.  On a number of occasions, this led to further document and data productions from SWA.  *Id.*  Concurrently, Plaintiff's counsel interviewed a number of SWA pilots to develop evidence to support liability, class certification, and damages.  *Id.* ¶ 32.E.

To prepare for mediation and litigation, Plaintiff's counsel thoroughly researched novel theories of liability for their claims (especially the § 4318 claim, where there are no reported cases on the duty to give employees information on deemed earnings), and developed novel arguments on why USERRA claims that accrued before October 2004 are timely.  Id. ¶ 32.F.  Before mediation, they prepared and shared with SWA a 27-page, single-spaced mediation statement and a 10-page single-spaced memorandum on the claims' timeliness.  *Id.* ¶ 32.G.  On June 26 and 27, 2018, the Parties engaged in a two-day mediation in Dallas with the Honorable Deborah

1   Hankinson, a former Texas State Supreme Court justice, who served as the mediator.  *Id*. ¶ 33.

2   The mediation resulted in an agreement in principle the Parties used to draft the Settlement

3   Agreement, which was executed on September 12, 2018.  *Id*. ¶ 34.

4        **D.**     <u>**The Settlement Class**</u>

5        The Parties have agreed to certify for settlement purposes a Class defined as "All former or

6   current pilots employed by Southwest who took Short-Term Military Leave [a period of military

7   leave of 14 calendar days or less] from Southwest between January 1, 2001 and the Preliminary

8   Approval Date."  Settlement § IV.A.  SWA, through its personnel records, has identified nearly

9   1,500 pilots who took STML from 2008 to 2018 and are accordingly members of the Settlement

10  Class.  PRF Decl. ¶ 35.  Although SWA lacks personnel records on which pilots took STML from

11  2001 to 2007, SWA has identified approximately 500 pilots who had a military status and were

12  employed by SWA between 2001 and 2007, but did not take STML between 2008 and 2018.

13  *Id*. ¶ 36.  Thus, the Parties estimate there may be as many as 2,000 potential Class Members.

14  Class Members who were not identified by SWA will have an opportunity to demonstrate their

15  membership in the Class and participate in the Settlement in the same manner as other Class

16  Members by filing a Claim Form with the Settlement Administrator, and all Class Members have

17  the opportunity to provide information on STML taken from 2001 to 2007.  Settlement § VII.

18  **III.**    <u>**THE PROPOSED SETTLEMENT**</u>

19       The Settlement provides substantial equitable and monetary relief to Class Members who

20  were denied sick leave and retirement benefits, and also valuable prospective programmatic relief.

21       <u>First</u>, current pilots will receive a 100% recovery of the accrued sick leave Plaintiff alleges

22  is owed to them from 2008 to the preliminary approval date,[3] and will have the opportunity to

23  submit a Claim Form to receive approximately 77% of the average accrued sick leave Plaintiff

24  

25  [3] From 2008 to the preliminary approval date, the amount of accrued sick leave that will be added

26  to Class Members' sick leave balances is the number of days of work Class Members dropped
    trips to take STML, times 7.1 TFP per day (the average number of TFP per day pilots earn when

27  they fly), times .10 TFP (the accrued sick leave TFP pilots earn for every 1.0 TFP flown).
    Settlement § VI.A.2.a.

28

alleges is owed to them from 2001 to 2007.[4]  Settlement § VI.A.2.a.  Plaintiff estimates that the value of this paid sick leave exceeds $13 million if Class Members use this sick leave.  PRF Decl. ¶¶ 41-42.  SWA maintains that the sick leave claims are worth only a fraction of this amount.  *Id.* ¶ 43.  Former pilots will receive a one-time $1,000 payment from the $5.8 million Settlement Fund (described below) in exchange for their Sick Leave Claims, as pilots usually forfeit their rights to accrued sick leave upon termination of employment and would not benefit from receiving additional sick leave.  *Id.* ¶ 39.  However, a small subset of former pilots, who have retired from Southwest and elected to exchange their accrued sick leave for continued health care coverage, will receive additional sick leave in their sick leave balance to contribute toward their continued health care coverage.

Second, a $5.8 million non-reversionary Settlement Fund will be created to, *inter alia*, make additional retirement contributions to Class Members' 401(k) accounts.  *Id.* § VI.A.1.  Under the proposed Plan of Allocation, for retirement-related claims from 2008 to 2013, each Class Member's share of the Settlement Fund will be based on SWA's personnel data on his or her STML and wage rates.[5]  *See* Plan of Allocation, Ex. A to Settlement.  For claims from 2001 to 2007, each Class Member's share of the Settlement Fund will be based on information provided via Claim Forms.[6]  *Id.*  It is estimated that after all payments are made from the Settlement Fund

---

[4] From 2001 to 2007—when SWA lacks STML records—Class Members will receive an additional 8.5 TFP of sick leave for every year they took STML during that period, if they file a simple Claim Form that identifies when they took STML from 2001 to 2007.  Settlement § VI.A.2.a.  8.5 TFP is 77% of the average annual amount of TFP of sick leave Class Members will receive from 2008 to 2013.  PRF Decl. ¶ 38.  This number was discounted to reflect SWA's defenses for these claims, including that claims that accrued from 2001 to 2004 are untimely and that claims for 2001 to 2007, when SWA no longer has STML records, are barred by laches.  *Id.*

[5] From 2008 to 2013, each Class Member's share of the Settlement Fund is based on (1) the number of days with trips dropped to take STML, times (2) 7.1 TFP, times (3) the Class Member's average base rate in the year, limited by a $25,000 maximum annual contribution SWA can make.

[6] For each year from 2001 to 2007, each Class Member's share of the Settlement Fund is based on (1) one-half the days of STML he or she took in the year (not to exceed 21 annually), times (2) 7.1 TFP, times (3) the Class Member's average base rate in the year.  For pre-October 2004 STML, each Class Member's share is reduced by two-thirds to reflect SWA's timeliness defense.

besides retirement-related payments, Class Members will receive a majority of their potential

losses from October 2004 to December 2013, and Class Members whose pre-October 2004 claims

have major timeliness issues will get 17% of their potential losses.  PRF Decl. ¶ 44.  (Class

Members' shares of the Settlement Fund will, in fact, represent a higher share of the 401(k)

contributions for which Class Members make claims, given that some Class Members will not

submit claim forms to claim credit for their STML from 2001 to 2007.  *Id.*)  To the greatest extent

possible, Class Members' retirement-related payments will be deposited into their 401(k) accounts

in a tax-deferred way to maximize the recovery.  Settlement § VIII.F.

   Third, SWA will make important changes to benefit the Class and future military pilots.

SWA will change its policy to provide accrued sick leave for pilots who take STML, Settlement

§ X.A, which will provide millions of dollars' worth of sick leave benefits to SWA pilots in the

future.  It also will regularly give detailed information to pilots on their deemed earnings so they

can better understand the retirement contributions they receive during periods of military leave.

*Id.* § X.B.

   Fourth, the release in this action is limited to claims arising from the accrual of sick leave

or retirement benefits related to STML.  *Id.* § XIV.  And the Settlement affords ample time for

Class Members to object, file claim forms, cash checks, and perform other actions relevant to

asserting their rights and securing benefits under the Settlement.  *Id.* § VII.C, VIII.H.

   Fifth, the Settlement allows Class Counsel to request up to $1.74 million in attorneys' fees,

plus litigation expenses.  *Id.* § XI.C.  This figure represents 30% of the $5.8 million Settlement

Fund, but is about *9% of the total estimated Settlement value* of nearly $19 million ($5.8 million

monetary relief plus $13 million-plus in equitable relief for additional sick leave benefits, without

counting millions of dollars' worth of sick leave pilots will get in the future).  In litigating this

matter, Class Counsel reviewed thousands of pages of documents, undertook a careful and

complicated analysis of detailed personnel records, conducted extensive legal and factual research

of the claims, zealously represented Plaintiff during the mediation and post-mediation settlement

talks, and otherwise aggressively pursued the case to achieve an excellent result.  PRF Decl. ¶ 32.

The Settlement allows Plaintiff to request a Service Award of $2,000 plus the unreimbursed costs

1    and lost wages resulting from his service to the Class.  Settlement § XI.C.[7]  The fees, costs, and

2    service award requests will be filed at least 14 days before the objection deadline.  *Id.* § VIII.C.

3    **IV.    ARGUMENT**

4    "Rule 23(e) directs the Court to examine the proposed settlement and make a preliminary

5    finding of fairness," with courts applying a strong judicial policy in favor of class settlements.

6    *Pacheo v. JP Morgan Chase Bank, N.A.*, No. 15 Civ. 05689, 2017 WL 3335844, at *2 (N.D. Cal.

7    Aug. 4, 2017).  When a class has not yet been certified, courts will conditionally certify a class

8    based on Rule 23's standards, grant preliminary approval, and authorize notice to the class if "the

9    proposed settlement (1) appears to be the product of serious, informed, noncollusive negotiations,

10   (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class

11   representatives or segments of the class, and (4) falls with the range of possible approval."  *Id.*

12       **A.    Certification of the Rule 23 Class Is Proper.**

13   The proposed Settlement Class should be certified under Rule 23(a) and (b)(3).

14          **1.    Rule 23(a) Is Satisfied.**

15   First, numerosity is met, as joinder of at least 1,500 Class Members would be impractical.

16   Fed. R. Civ. P. 23(a)(1); *see Jordan v. L.A. Cty.*, 669 F.2d 1311, 1319 (9th Cir. 1982).

17   Second, commonality is met as "there are questions of law or fact common to the class."

18   Fed. R. Civ. P. 23(a)(2).  Commonality focuses on whether there are common issues of fact or law

19   among class members and whether a class action will "generate common answers apt to drive the

20   resolution of the litigation."  *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013)

21   (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  Here, the many common

22   questions include whether SWA had uniform practices of denying pilots accrued sick leave for

23   STML and denying pilots information on deemed earnings, and whether these practices violate

24   _____

25   [7] This award will compensate Plaintiff, a current SWA pilot, for risks he incurred in bringing this
26   case, which garnered attention in the SWA pilot community, and would reimburse him for costs
     and time spent on the case at the rate he would have earned were he working.  He spent significant
27   time and effort to prosecute the claims, speak with many Class Members, communicate with Class
     Counsel, attend pre-mediation planning meetings, and actively participate in a two-day mediation.
28   As a result, he missed a number of work days.  PRF Decl. ¶ 45.

USERRA.  *Cancilla v. Ecolab, Inc.*, No. 12 Civ. 03001, 2015 WL 4760318, at *3 (N.D. Cal. Aug. 12, 2015) (commonality met where "resolution of the claims depends on common questions of law and fact about the class members' employment"); *Tuten v. United Airlines, Inc.*, No. 12 Civ. 1561, 2013 WL 8480458, at *1 (D. Colo. Oct. 31, 2013) (pilots met commonality when all were "subject to the same policy" of denying USERRA benefits).

Third, Plaintiff's claims are typical, as he challenges the same uniform practices and suffered the same injury as the Class: denial of accrued sick leave and 401(k) contributions.  *See* Fed. R. Civ. P. 23(a)(3); *Whiteway v. FedEx Kinko's Office & Print Servs.*, No. 05 Civ. 2320, 2006 WL 2642528, at *6 (N.D. Cal. Sept. 14, 2006) (typicality "focuses on the similarity between the lead plaintiff's legal theories and those of the people he or she purports to represent.").

Fourth, Plaintiff has fairly and adequately protected the interests of the class and will continue to do so.  Fed. R. Civ. P. 23(a)(4).  Adequacy is met where a class representative: (1) has common, and not antagonistic, interests with the class members, and (2) will vigorously prosecute the class' interests through qualified counsel.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Here, Plaintiff, a reservist and pilot like the Class Members, shares the same interest as the Class in seeing SWA pilots receive relief for Sick Leave and Retirement Claims and modifying SWA's policies to secure future benefits.  Plaintiff is also represented by counsel who are highly experienced in prosecuting USERRA and other employment class actions.  Class Counsel have a strong track record of obtaining excellent results in USERRA class actions, including three of the four largest reported USERRA class settlements (without including this settlement).  PRF Decl. ¶ 8; Decl. of Thomas G. Jarrard ¶ 4; Decl. of Matthew Crotty ¶ 4.[8]

## 2.   **Certification Is Proper Under Rule 23(b)(3).**

Rule 23(b)(3) requires that common questions "predominate over any questions affecting

---

[8] *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1008 (D. Colo. 2014) (stating on same group of lawyers, "the results achieved for the Plaintiff class in this case were outstanding, worthy of being emulated by . . . counsel in other comparable litigation"); Ex. 1 to PRF Decl. (*Allman v. Am. Airlines, Inc. Pilot Ret. Benefit Plan*, 1:14 Civ. 10138 (D. Mass. 2017)) (settlement in USERRA pension class action worth around $6.5 million); Ex. 2 to PRF Decl. (*Martin v. State of Wash.*, 14-2-00016-7 (Spokane Super. Ct. 2017) (USERRA settlement worth about $15 million).

UNOPPOSED MOTION FOR CONDITIONAL CERT. AND
PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 3:17-cv-03972-JD

1    only individual members, and that a class action is superior to other available methods for fairly

2    and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Both standards are met.

3         The predominance inquiry "asks whether the common, aggregation-enabling, issues in the

4    case are more prevalent or important than the non-common, aggregation-defeating, individual

5    issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citations and quotations

6    omitted).  Thus, "[w]hen one or more of the central issues in the action are common to the class

7    and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even

8    though other important matters will have to be tried separately, such as damages." *Id*.  Here,

9    common issues predominate, as nearly all the central issues are common to the Class and can be

10   proven with common, aggregation-enabling evidence and legal arguments.  Plaintiff and the Class

11   Members performed the same type of work, took the same type of leave, were uniformly denied

12   the same benefits, and assert identical legal claims.  Potential damages can be calculated by

13   applying the same methodology to common types of personnel data.  And it is well established

14   that the "amount of damages . . . does not defeat class action treatment." *Leyva v. Medline Indus.*

15   *Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *accord Tyson Foods*, 136 S. Ct. at 1045.

16        Superiority rests on factors like individual class members' desire to bring individual

17   actions and the utility of concentrating the litigation in one forum.  Fed. R. Civ. P. 23(b)(3).  Here,

18   "there is no indication[] that class members seek to individually control their cases, that individual

19   litigation is already pending in other forums, or that this particular forum is undesirable for any

20   reason." *Tierno v. Rite Aid Corp.*, No. 05 Civ. 02520, 2006 WL 2535056, at *11 (N.D. Cal. Aug.

21   31, 2006).  Individual Class Members likely lack the resources to secure experienced, qualified

22   counsel to prosecute their cases individually, or the desire to individually prosecute their cases

23   given the modest value of individual claims.  *See* PRF Decl. ¶ 46.  Plaintiff is unaware of any prior

24   or pending litigation that raises the same claims as this case.  And it is desirable to concentrate the

25   litigation in a single forum with a single ruling, Fed. R. Civ. P. 23(b)(3)(C), as the Class Members

26   and SWA both have an interest in SWA applying the same sick leave and retirement benefit

27   policies to all pilots.  A class action will achieve economies of scale for the Class, conserve

28   judicial resources, avoid repetitive proceedings, and prevent inconsistent adjudications.

- 10 -

1

### 3.   Class Counsel Should Be Appointed.

The Court should appoint Outten & Golden LLP as Lead Class Counsel and the Law

Office of Thomas Jarrard PLLC and Crotty & Son Law Firm PLLC as Class Counsel, under Rule

23(g).  Adequacy of class counsel depends on (1) work performed on the matter, (2) experience,

(3) knowledge of the law, and (4) resources counsel can commit.  Fed. R. Civ. P. 23(g)(1)(A).

Class Counsel satisfy these criteria, as set forth above.  *Supra* § IV.A.1.

### B.   Preliminary Approval Should be Granted.

The Settlement satisfies preliminary approval standards, *Pacheo*, 2017 WL 3335844, at *2,

and Rule 23(e)'s standard that a settlement be "fair, reasonable, and adequate," Fed. R. Civ. P.

23(e).  First, the Settlement resulted from "serious, informed noncollusive negotiations."  *Pacheo*,

2017 WL 3335844, at *2.  Since last fall, the Parties, represented by experienced counsel, engaged

in the discovery needed to assess SWA's potential liability and damages, and they undertook hard-

fought negotiations culminating in a two-day mediation with a former Texas Supreme Court

justice and weeks of negotiations over a final agreement.  PRF Decl. ¶¶ 32-34.  A settlement

reached "in good faith after a well-informed arms-length negotiation" is presumed to be fair,

*Fernandez v. Victoria Secret Stores, LLC*, No. 06 Civ. 04149, 2008 WL 8150856, at *4 (C.D. Cal.

July 21, 2008), and "'[g]reat weight' is accorded to the recommendation of counsel," *Nat'l Rural*

*Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting *In re*

*Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)).

Second, the Settlement has no obvious deficiencies and does not provide preferential

treatment to any segment of the Class.  *Pacheo*, 2017 WL 3335844, at *2.  It provides substantial

relief to Class Members for both their Sick Leave and Retirement Claims based on common

methodologies that take into account each Class Member's personnel history.[9]

---

[9] The proposed Plan of Allocation gives a lower share to claims that face serious timeliness challenges.  *See Cabrera v. Perceptive Software, LLC*, 147 F. Supp. 3d 1247, 1250-52 (D. Kan. 2015) (discussing USERRA timeliness issues).  "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008).  Also, Class Members who no longer have sick leave balances will receive $1,000 in lieu of accrued sick leave, as they

<u>Finally</u>, the Settlement "falls with the range of possible approval," as it provides outstanding relief to the Class when considering the major risks of litigation. *Id*.  In assessing this factor, courts consider the factors that are considered in greater detail at the final approval stage, such as: (1) "the strength of the plaintiffs' case," "the risk, expense, complexity, and likely duration of further litigation," and "the risk of maintaining class action status throughout the trial," (2) "the amount offered in settlement," (3) "the extent of discovery completed and the stage of the proceedings," and (4) "the experience and views of counsel."  *Hanlon*, 150 F.3d at 1026.

### 1.   **Plaintiff's Case Faced Significant Hurdles and Risk.**

"Approval of a class settlement is appropriate when there are significant barriers plaintiffs must overcome in making their case."  *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14 Civ. 01788, 2016 WL 344532, at *4 (N.D. Cal. Jan. 28, 2016) (internal quotation marks omitted). Plaintiff faces substantial obstacles on both liability and damages in this action.

<u>First</u>, the case involves complex legal issues and damages claims under an infrequently litigated provision of USERRA, 38 U.S.C. § 4318.  In fact, there are *no* prior decisions on the specific USERRA retirement claim Plaintiff alleges here: that an employer can be held liable for failing to give reservists information on their deemed earnings that, in turn, makes it harder for them to make and receive matching make-up contributions.  And few cases have addressed when military leave is comparable to other types of leave such that reservists' benefits must continue to accrue like with other forms of leave.  *E.g.*, *Duffer v. United Cont'l Holdings, Inc.*, 173 F. Supp. 3d 689, 703-04 (N.D. Ill. 2016) (finding jury duty and sick leave comparable to military leave).  Thus, there is a significant risk as to whether Plaintiff's claims would prevail as a matter of law.

<u>Second</u>, absent settlement, SWA was prepared to litigate many factual and legal questions that could impact liability, class certification, and damages, like the character and frequency of

---

cannot benefit from additional sick leave.  The vast majority of these Class Members who have been identified were only briefly employed by SWA and did not have a long opportunity to take STML. Of these 75 Class Members, 39 worked for less than a year, 55 worked for less than 2 years, and 61 worked for less than 3 years.  PRF Decl. ¶ 40.  These 75 Class Members who have terminated their employment represent 5% of the 1,478 total identified Class Members.  *Id.*

leaves that Plaintiff claims are comparable to military leave, whether Class Members in fact sought out information on deemed earnings or tried to make USERRA contributions for STML, and whether SWA or the Plan administrator was liable for the 401(k) claims.

Third, SWA was prepared to argue a large portion of Class Members' claims—which date back to 2001—are untimely.  This issue turns on (1) whether USERRA had a statute of limitations ("SOL") before a 2008 amendment, and (2) if so, what impact the 2008 amendment had on claims that accrued before the amendment.  38 U.S.C. § 4327(b); *Cabrera*, 147 F. Supp. 3d at 1250-52 ("Courts generally have determined that [a] four-year statute of limitations . . . applies to USERRA claims that accrued and expired before October 10, 2008.").  This issue is unsettled, and if decided in SWA's favor could wipe out all claims that accrued prior to October 10, 2004 and even claims that accrued before October 10, 2008.  *Id.*  While Plaintiff does not believe laches is a valid defense to USERRA claims, *see* 38 U.S.C. § 4327(b), SWA was prepared to argue that laches bars many years' worth of class claims, especially since SWA no longer has complete STML records prior to 2008.

Fourth, if the case were further litigated, the Parties would face disputes on damages, if any, owed.  For example, SWA was prepared to argue that it is not reasonable to assume that pilots would have made additional contributions to their 401(k) accounts if they had been given additional information about their deemed earnings for periods of STML. SWA was also prepared to argue that the sick leave claims have only limited monetary value because many pilots carry large sick leave balances and because the CBA specifies both that sick leave can only be used during periods of sickness and that sick leave is not payable upon termination.

## 2.      The Settlement Amount Is Appropriate.

"[P]erhaps the most important factor" for evaluating preliminary approval is "plaintiffs' expected recovery balanced against the value of the settlement offer."  *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016).  Although SWA disputes Plaintiff's estimate, Plaintiff estimates the aggregate value of the Settlement in equitable and monetary relief is approximately $19 million, including the value of sick leave and the $5.8 million Settlement Fund.  PRF Decl. ¶¶ 41-42.  For the Retirement Claims, the Settlement provides Class Members—after deducting

fees, costs, a service award, and administrative costs—more than half of their estimated alleged losses from October 2004 to December 2013, and around 17% recovery for earlier claims that have a significant likelihood of being held untimely.  *Id.* ¶ 44.  For the Sick Leave Claims, current SWA pilots will receive 100% of their potential sick leave recovery for any STML taken since 2008, and approximately 77% of their potential sick leave recovery for any STML taken from 2001 to 2007.  *Id.* ¶¶ 37-38.  Given the risks the Class faced on liability, damages, and class certification, the Settlement offers outstanding relief, and quite possibly greater relief than could be obtained via protracted litigation.  *See In Re: Heritage Bond Litig.*, No. 02 ML 1475, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (calling a recovery of 23% of the claimed loss after the deduction of fees an "exceptional result").

### 3.     The Extent of Discovery Supports Settlement.

The touchstone of the analysis of the extent of discovery is whether "the parties have sufficient information to make an informed decision about settlement."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Here, the Parties had robust information to settle the case in an informed manner.  For years before the action, Plaintiff's counsel engaged in factfinding, including speaking with SWA pilots and obtaining information on SWA's sick leave and retirement policies.  PRF Decl. ¶¶ 30-31.  After filing the action, Plaintiff's counsel obtained all the key information they needed to fully assess risks and potential relief, including personnel records and interviews of pilots.  They routinely collaborated with SWA's counsel and Plaintiff to understand the policies and data and what new information would improve their analysis.  *Id.* ¶ 32. Plaintiff's counsel used all this information to successfully mediate and settle the case.

### C.     The Proposed Notice Is Clear And Adequate.

The proposed Notice is "reasonable" and the "best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B) & (e)(1).  The Notice and Claim Form are consistent with modern best practices.  They will be disseminated by U.S. Mail and, where available, e-mail to the nearly 1,500 pilots who have been identified as Class Members and an additional approximately 500 pilots who are potential Class Members because they had a military status and were employed by SWA between 2001 and 2007.  The Notice makes clear that the Settlement

Administrator and Class Counsel are available to assist Class Members.  It explains Class Members have 120 days to object or opt out, 120 days to submit a Claim Form to identify STML they took from 2001-2007, and 180 days to cash checks (should all of their payments not be deposited into their 401(k) accounts).  Notice, Ex. B to Settlement.

## V.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.

Plaintiff proposes the following schedule for finalizing and implementing the Settlement:

| Event | Proposed Date |
|---|---|
| Preliminary Approval ("PA") Hearing | November 8, 2018 |
| Entry of PA Order | November __, 2018 |
| Notice disseminated by Settlement Administrator | 30 Days After PA |
| Reminder notices | 60 Days After PA |
| Fee and Service Award motions due | 135 Days After PA |
| Deadline for Class Members to submit requests for exclusion, objections, and/or Claim Forms | 150 Days After PA |
| Settlement Administrator submits final report to Parties | 180 Days After PA |
| Final Approval motion due | 135 Days After PA |
| Final approval, Service Award fee reply briefs | 135 Days After PA |
| Final Approval Hearing | May 2, 2019 |
| Effective Date (assuming no appeals) (assumed for purposes of calculating subsequent dates) | 31 Days After Final Approval Order |

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court: (1) conditionally certify the Settlement Class; (2) preliminarily approve the Settlement; (3) appoint Plaintiff as the Class Representative, his counsel as Class Counsel, and Settlement Services, Inc. as the Settlement Administrator; (4) set the deadlines for filing claims, written exclusions, or objections to the Settlement, among other matters; (5) approve the Claim Form and notice to the class of the Settlement; and (6) schedule a hearing on the final approval of the Settlement.

DATED: September 13, 2018                              Respectfully submitted,


By: */ s / Peter Romer-Friedman*
Peter Romer-Friedman (*pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue NW,
Second Floor West Suite

- 15 -

Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile:  (202) 847-4410
Email:  prf@outtengolden.com

Jahan C. Sagafi (Cal. Bar No. 224887)
Rachel W. Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:   (415) 638-8810
Email:  jsagafi@outtengolden.com
Email:  rdempsey@outtengolden.com

Thomas G. Jarrard (*pro hac vice*)
LAW OFFICE OF THOMAS JARRARD PLLC
1020 N. Washington Street
Spokane, WA  99201
Telephone:  (425) 239-7290
Facsimile:   (509) 326-2932
Email:  Tjarrard@att.net

Matthew Z. Crotty (*pro hac vice*)
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Avenue, Suite 404
Spokane, WA 99201
Telephone:  (509) 850-7011
Email:  matt@crottyandson.com

*Attorneys for Plaintiff and the Proposed Class*