Peter Romer-Friedman (*pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue, NW
Second Floor West Suite
Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile: (202) 847-4410
Email: prf@outtengolden.com

Jahan C. Sagafi (Cal. Bar No. 224887)
Rachel W. Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One California St, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8800
Email: jsagafi@outtengolden.com
Email: rdempsey@outtengolden.com

Thomas G. Jarrard (*pro hac vice*)
LAW OFFICE OF THOMAS JARRARD
PLLC
1020 N. Washington Street
Spokane, WA  99201
Telephone: (425) 239-7290
Facsimile:  (509) 326-2932
Email: tjarrard@att.net

Matthew Z. Crotty (*pro hac vice*)
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Avenue, Suite 404
Spokane, WA 99201
Telephone: (509) 850-7011
Email: matt@crottyandson.com

*Counsel for Plaintiff and Settlement Class Members*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

JAYSON HUNTSMAN, on behalf of himself and all others similarly situated,

        Plaintiff,

  v.

SOUTHWEST AIRLINES CO.,

        Defendant.

Case No. 3:17-cv-03972-JD

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM IN SUPPORT OF MOTION**

Judge:        James Donato
Hearing Date:  June 20, 2019
Hearing Time:  10:00 am
Courtroom:    11

## NOTICE OF MOTION AND MOTION

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE THAT on June 20, 2019, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 11 of this Court's San Francisco Courthouse, located at 450 Golden Gate Ave., San Francisco, California, Plaintiff Jayson Huntsman, individually and on behalf of all others similarly situated ("Plaintiff") will, and hereby does, move this Court for an order: (1) granting, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, final approval of the Parties' proposed class action settlement (the "Settlement"), and entry of judgment in accordance with the Settlement; and (2) granting, pursuant to Rules 23(a) and 23(b)(3), final class certification of the Settlement Class conditionally certified in the Preliminary Approval Order.  ECF No. 44.

Plaintiff makes this motion on the grounds that the Settlement is fair, adequate, and reasonable, was reached through arm's-length negotiations with an experienced mediator, and has drawn a highly favorable response from the Class, as described in the attached memorandum.

The motion is based on this notice of motion and motion; the memorandum in support of the motion; the Declaration of Peter Romer-Friedman in Support of Final Approval; the Declaration of Peter Romer Friedman in Support of Class Counsel's Motion for Award of Attorneys' Fees, Costs, and Service Award (ECF No. 49-1); the Declaration of Mark Patton in Support of Final Approval; the Court's record of this action; all matters of which the Court may take notice; and any oral evidence presented at the hearing on the motion.

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 3

    A.    Class Counsel Carefully Investigated Class Members' Claims, Conducted Significant Discovery, and Engaged in Careful Analysis of Data and Document Discovery Before Agreeing to the Settlement. ................................................... 3

    B.    The Settlement Class ................................................................................ 3

    C.    The Settlement ......................................................................................... 4

        1.    Retirement Claims ........................................................................ 5

        2.    Sick Leave Claims ........................................................................ 6

        3.    Release ......................................................................................... 6

    D.    Notice Process ......................................................................................... 6

        1.    The Administrator Adhered to the Class Notice Requirements. ........ 6

        2.    CAFA's Notice Requirements Were Satisfied ................................ 7

III.   ARGUMENT ..................................................................................................... 7

    A.    The Best Practicable Notice of Settlement Has Been Provided to the Class ................ 7

    B.    Final Approval Is Appropriate Under Rule 23 .......................................... 8

        1.    Plaintiff Faced Substantial Obstacles to Recovery ........................... 9

        2.    The Risk, Expense, Complexity, and Delay of Further Litigation Support Final Approval ................................................ 10

        3.    Plaintiff Faced a Risk of the Denial of Class Certification. ............. 10

        4.    The Settlement Amount Fairly and Adequately Compensates the Class ......... 10

        5.    The Extent of Discovery Supports Settlement. ............................... 11

        6.    Counsel's Experience and Views Support Approval. ....................... 12

        7.    The Parties Participated in Arm's-Length Negotiations Before an Experienced Mediator. ................................................ 12

        8.    The Class Members Have Reacted Positively to the Settlement ...... 12

IV.    THE COURT SHOULD CERTIFY THE CLASS AS FINAL ............................. 15

V.     CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*Alleyne v. Time Moving & Storage Inc.*,
  264 F.R.D. 41 (E.D.N.Y. 2010) ................................................................................ 11

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) .............................................................................. 11

*Cabrera v. Perceptive Software, LLC*,
  147 F. Supp. 3d 1247 (D. Kan. 2015) ...................................................................... 14

*Churchill Village, L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004)............................................................................... 8, 13

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992)............................................................................ 2, 10

*Cotter v. Lyft, Inc.*,
  176 F. Supp. 3d 930 (N.D. Cal. 2016) ...................................................................... 9

*Cotter v. Lyft, Inc.*,
  193 F. Supp. 3d 1030 (N.D. Cal. 2016) .................................................................... 9

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................................................... 8

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980) ................................................................................ 12

*Ford v. CEC Entm't Inc.*,
  No. 14 Civ. 677, 2015 WL 11439033 (S.D. Cal. Dec. 14, 2015) .............................. 8

*Four in One Co., Inc. v. S.K. Foods, L.P.*,
  No. 08 Civ. 3017, 2014 WL 4078232 (E.D. Cal. Aug. 14, 2014) ........................... 13

*Fraley v. Facebook, Inc.*,
  966 F. Supp. 2d 939 (N.D. Cal. 2013) .................................................................... 15

*Guilbaud v. Sprint Nextel Corp.*,
  No. 13 Civ. No. 04357, 2016 WL 7826649 (N.D. Cal. Apr. 15, 2016)...................... 9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998).......................................................................... 8, 15

*Hughes v. Microsoft Corp.*,
  No. 93 Civ. 178C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ..................... 12

*Jones v. Agilysys, Inc.*,
  No. 12 Civ. 03516, 2014 WL 2090034 (N.D. Cal. May 19, 2014) .......................... 11

*Knight v. Red Door Salons, Inc.*,
  No. 08 Civ. 01520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .............................. 11

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)......................................................................................... 11, 14

*Munoz v. Giumarra Vineyards Corp.*,
   No. 09 Civ. 00703, 2017 WL 2665075 (E.D. Cal. June 21, 2017) ................................... 13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................................... 14

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
   688 F.2d 615 (9th Cir. 1982).......................................................................................... 10, 11

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995)............................................................................................... 12

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009).......................................................................................... 12, 13

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)............................................................................................ 2, 8

*Thomas v. Albright*,
   139 F.3d 227 (D.C. Cir. 1998) ......................................................................................... 14

*Tumampos v. Cathay Pac. Airways LTD.*,
   No. 16 Civ. 6208, 2018 WL 5603702 (N.D. Cal. Sept. 21, 2018) .................................. 10

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ..................................................................................................... 10

*United States v. Armour & Co.*,
   402 U.S. 673 (1971) ......................................................................................................... 10

**Statutes**

28 U.S.C. § 1715(d) ................................................................................................................. 7

38 U.S.C. § 4316(b) ................................................................................................................. 9

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. 7, 8

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:17-CV-03972-JD

1
## MEMORANDUM OF POINTS AND AUTHORITIES

2
## I.   INTRODUCTION

3      Plaintiff Jayson Huntsman respectfully requests final approval of this Settlement of the

4 claims of Plaintiff and a class of between 1,648 and 1,971[1] Southwest Airlines ("SWA") pilots who

5 Plaintiff alleges were denied paid sick leave and appropriate matching retirement contributions for

6 periods of military leave that lasted 14 days or less ("short-term military leave" or "STML") in violation

7 of the Uniformed Services Employment and Reemployment Rights Act ("USERRA").  In exchange for

8 the release of these claims, the Settlement provides for a $5.8 million payment, 100% of the sick

9 leave benefits that pilots who can use sick leave benefits in the future were allegedly denied

10 between 2008 and December 5, 2018, and 77% of the average sick leave benefits that they were

11 allegedly denied between 2001 and 2007.  The Settlement also provides injunctive relief (1)

12 requiring SWA to change its sick leave policy so that pilots accrue sick leave during STML moving

13 forward, and (2) requiring SWA to provide more information to SWA pilots about the USERRA

14 retirement credit and contributions they receive for periods of STML.  The Settlement is the result

15 of arm's-length negotiations by experienced counsel and was reached after significant investigation

16 of the claims, including interviews of witnesses and a detailed analysis of data and documents

17 produced by SWA.

18      Furthermore, the Settlement, which received preliminary approval on December 5, 2018, *see*

19 ECF No. 44, has received an exceptionally positive response from the Class.  Of the 1,999

20 Recognized and Potential Class Members to whom notice was sent, only one has opted out, which

21 ───────────────

[1]      The Class consists of 1,506 pilots who were identified by SWA as having taken short-term
22 military leave for which they dropped a trip between January 1, 2008 and December 5, 2018
("Recognized Class Members").  Declaration of Mark Patton in Support of Final Approval ("SSI FA
23 Decl.") ¶¶ 6, 8.  In addition, SWA identified an additional 493 pilots who were identified as having a
military status between January 1, 2001 and December 31, 2007 ("Potential Class Members").  *Id.*;
24 *see also* Declaration of Peter Romer-Friedman in Support of Class Counsel's Motion for Award of
Attorneys' Fees, Costs, and Service Award ("PRF Fee Decl."), ECF No. 49-1 ¶ 44.  Potential Class
25 Members were given the opportunity to self-identify as having taken military leave during the Class
Period by submitting a Claim Form, PRF Fee Decl., ECF No. 49-1 ¶ 44, and 141 did so, SSI FA
26 Decl. ¶ 11.  Additionally, one claimant was not identified by SWA either on the list of Recognized
Class Members or on the list of Potential Class Members.  *Id.*  SWA confirmed that this claimant was
27 employed by SWA during the class period, which along with his sworn Claim Form is sufficient to
demonstrate his membership in the Class pursuant to the Settlement Agreement.  PRF Fee Decl., Ex.
28 3 ("Settlement Agreement" or "Settlement") at § II.W.  Accordingly, there are least 1,648 Class
Members and at most 1,999 Class Members.

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:17-CV-03972-JD

he did because he felt that he received all the benefits the deserved, and only one has objected to any aspect of the Settlement.  *See* SSI FA Decl. ¶ 13 & Ex. B; ECF No. 51.  The substantial majority of the Class—1,506 Class Members—will receive an automatic deposit of additional sick leave benefits or, for former SWA pilots, a one-time payment of $1,000 for their sick leave claims, as well as an automatic payment of retirement benefits for their claims dating from January 1, 2008 onward.  Settlement § VI.A.2.  Further supporting final approval is the high proportion of eligible pilots who submitted an optional claim form: 558 total Class Members submitted Claim Forms to recover sick leave and retirement benefits for STML they took from January 1, 2001 to December 31, 2007, including 142 pilots who would not otherwise have recovered from the Settlement and an additional 416 pilots who will also receive an automatic award for the January 1, 2008 to December 5, 2018 time period.  SSI FA Decl. ¶ 11.

Class Counsel conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in this action.  PRF Fee Decl. ¶ 37.  Class Counsel and the Settlement Administrator also have spoken to several hundred Class Members to explain the action and to answer questions about the Settlement, the claims process, and the Claim Form.  Declaration of Peter Romer-Friedman in Support of Final Approval ("PRF FA Decl.") ¶ 5 (stating Class Counsel spoke with a combined total of about 106 Class Members and emailed with a combined total of approximately 50 Class Members); SSI FA Decl. ¶ 4 (the Settlement Administrator received 202 calls from Class Members).  Finally, the Settlement is reasonable given the expense, complexity, and likely duration of further litigation.  *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).[2]

In connection with the request for final settlement approval, Plaintiff also requests that the Court confirm as final the certification of the Class, the appointment of Plaintiff as the Class

---

[2]     Pursuant to the Settlement and the Court's Preliminary Approval Order, Class Counsel have moved separately for an award of attorneys' fees and costs, settlement administration costs, and service payments to Plaintiff.  ECF No. 49.  SWA does not oppose that motion.  ECF No. 50.

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:17-CV-03972-JD

1  Representative, and the appointment of Plaintiff's Counsel as Class Counsel.  *See* Preliminary

2  Approval Order ("PA Order"), ECF No. 44.[3]

3  **II.   FACTUAL BACKGROUND**

4      **A.   Class Counsel Carefully Investigated Class Members' Claims, Conducted
       Significant Discovery, and Engaged in Careful Analysis of Data and Document**

5      **Discovery Before Agreeing to the Settlement.**

6          Class Counsel conducted an in-depth investigation of Plaintiff and the Class's claims

7  beginning several years prior to filing the Complaint.  PRF Fee Decl. ¶¶ 34-35.  The investigation

8  included reviewing retirement plan documents, speaking with pilots and union officials, and

9  interviewing pilots who had been impacted by the policies at issue in this action.  *Id.* ¶ 35.  After

10 filing the Complaint and in preparation for mediation, the parties exchanged class-wide discovery,

11 including voluminous personnel data.  *Id.* ¶ 37.A-C.  Plaintiff and his attorneys simultaneously

12 conducted additional, extensive legal and factual research into his claims and worked with their

13 damages analyst to develop models that would calculate the potential losses of the Class Members.

14 *Id.* ¶ 37.D-F.  Class Counsel and Plaintiff's diligent investigation and prosecution of this action on

15 behalf of the Class is further detailed in the previously-filed Motion for Attorneys' Fees, Costs &

16 Service Award, ECF No. 49 at 8-10, and the Motion for Preliminary Approval, ECF No. 37 at 2-5.

17         On June 26 and 27, 2018, the parties engaged in a two-day mediation in Dallas conducted

18 by the Honorable Deborah Hankinson.  PRF Fee Decl. ¶ 38. The resulting Settlement was executed

19 on September 12, 2018.  *Id.* ¶ 30.  On December 5, 2018, this Court granted preliminary approval of

20 the Settlement, conditionally certified a Rule 23 class, and appointed Outten & Golden LLP, Crotty

21 and Son Law Firm, PLLC, and the Law Office of Thomas G. Jarrard, PLLC as Class Counsel.  PA

22 Order, ECF No. 44.

23     **B.   The Settlement Class**

24         Each month, SWA pilots bid on their flight schedules, which vary month-to-month.  PRF Fee

25 Decl. ¶ 23.  Pilots are compensated based on a unit called Trips For Pay ("TFP"), which roughly

---

[3]     Even if no opposition to this Motion or to the Motion for Awards of Attorneys' Fees, Costs,
and Service Award, ECF No. 49, are filed, Plaintiff intends to file a reply brief on June 6, 2019.  This
brief will include updated attorneys' fees and cost information, and any other supplemental, relevant
information on the Settlement and claims process that becomes available prior to that date.

corresponds to a certain number of miles flown. *Id.* When a pilot does not fly TFPs that he or she was scheduled to fly, the missed TFPs are called "dropped trips." *Id.* ¶ 24. Pilots report all days that they are scheduled to perform military duty to SWA, regardless of whether they were scheduled to work on those days or not. PRF FA Decl. ¶ 4. Days where pilots drop trips to perform military duty are reported under a separate system code. *Id.*

The Settlement Class is defined as all former or current pilots employed by SWA who took STML from SWA between January 1, 2001 and December 5, 2018. Settlement § II.W. Based on its personnel records, SWA has identified 1,506 Class Members who dropped a trip to take STML between January 1, 2008 and December 5, 2018 ("Recognized Class Members"). SSI FA Decl. ¶¶ 6, 8. SWA represented to Class Counsel that it does not have records of which pilots took STML or dropped a trip to take STML between January 1, 2001 and December 31, 2007. PRF Fee Decl. ¶ 44. However, SWA was able to identify 493 pilots who had a military status at some point during their employment with SWA and were employed by SWA between January 1, 2001 and December 31, 2007 ("Potential Class Members"). SSI FA Decl. ¶ 6. The Settlement Administrator sent Notice to all 1,999 Recognized and Potential Class Members. SSI FA Decl. ¶¶ 7-8.

## C.   The Settlement

The Settlement provides monetary and injunctive relief to the Class, as well as a deposit of additional sick leave for all Class Members who still have access to their sick leave banks, which is the vast majority of Class Members. The $5.8 million monetary payment will cover (a) supplemental contributions to Class Members' 401(k) accounts, or if that is not possible, cash payments to Class Members for their claims related to USERRA make-up contributions; (b) payments of $1,000 each to former employees who no longer have access to their sick leave banks, as consideration for the release of their claims for accrued sick leave; (c) an award of attorneys' fees and costs; (d) a Service Award to Mr. Huntsman; (e) the costs of providing notice to the Class; and (f) any taxes owed by the Settlement Fund. Settlement § II.AA. Plaintiff estimates that the additional sick leave that will be deposited into Class Members' sick leave banks has an additional value of up to $13 million. PRF Fee Decl. ¶ 49. The Settlement also requires SWA to provide sick leave during STML in the future

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:17-CV-03972-JD

1   and to provide pilots with additional information about the deemed earnings associated with their
2   military leave.  Settlement § X.

3           **1.**        <u>**Retirement Claims**</u>

4         For Class Members' claims regarding the alleged improper matching of retirement funds
5   ("Retirement Claims"), the Settlement covers the time period from January 1, 2001 until December
6   31, 2013.  Settlement § XIV.A.  For leave taken between January 1, 2008 and December 31, 2013,
7   the pro rata share of Class Members' Retirement Claims recovery is determined by the number of
8   days of STML during which they dropped trips.  Ex. A to Settlement ("Plan of Allocation") at 2.

9         For the time period between January 1, 2001 and December 31, 2007, as noted above, SWA
10  has represented that it does not have the data necessary to calculate days of STML with dropped
11  drips.  PRF Fee Decl. ¶ 44.  Therefore, Class Members who took STML during that period were able
12  to complete Claim Forms to self-identify their STML, Settlement § VII, and 558 did so.  SSI FA
13  Decl. ¶ 11.  Because Class Members were more likely to have or be able to recreate records of
14  military leave (*i.e.*, military service performed, regardless of whether a trip was dropped) than records
15  of dropped trips, the Claim Form requested the number of days per month that each Class Member
16  took STML between January 1, 2001 and December 31, 2007 without requesting that the Class
17  Members report whether they had dropped a trip.  Plan of Allocation at 3-4.  For each day during
18  which Class Members reported having taken STML, they are deemed to have dropped one-half of a
19  day of trips, with no Class Member deemed to have dropped trips for more than 7 days of STML per
20  month or 21 days per year.  *Id.*

21        To reflect SWA's laches and statute of limitations defenses, the monthly dropped trip days are
22  reduced by two-thirds for claims between January 1, 2001 and October 31, 2004.  *Id.* at 4.  Then, for
23  all Retirement Claims, the number of credited days of STML with dropped trips is multiplied by 7.1,
24  to reflect the average number of TFPs a pilot flies per day, which is then multiplied by the maximum
25  percentage of a pilot's earnings SWA would match in a given year.  *Id.*  That number is multiplied by
26  each pilot's average base rate of pay.  *Id.*  Each pilot's total possible 401(k) award under the
27  Settlement is capped at a total of $25,000 per year for each pilot, including the amount of matching
28  contributions that SWA already made to the pilot each year.  *Id.* at 2-3.

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:17-CV-03972-JD

### 2.   Sick Leave Claims

The claims regarding the accrual of sick leave during STML ("Sick Leave Claims") cover the time period from January 1, 2001 until December 5, 2018.  Settlement § XIV.A.  For each day a Class Member who is a current employee dropped a trip to take STML between January 1, 2008 and December 5, 2018, that Class Member will receive 0.71 TFPs of accrued sick leave.  Settlement § VI.A.2.a.  That number reflects the average number of TFPs flown per day times 0.1, because pilots accrue 1 TFP of sick leave for every 10 TFPs flown.  *Id.*  For claims involving STML between January 1, 2001 and December 31, 2007, Class Members who are current SWA employees and who submitted Claim Forms will receive 8.5 TFP of accrued sick leave per year for each year in which they identified STML.  *Id.*  Class Members who are former employees will each receive a one-time payment of $1,000, except for the small subset of retired SWA pilots who have elected to exchange sick leave for continued health coverage until they turn 65 years old, whose award will be calculated in the same manner as current employees.  *Id.*

### 3.   Release

The release is limited to only those claims actually asserted in the action or factually related to the allegations made in the action.  *Id.* § XIV.A.  Thus, the release covers only claims that:

> (1) arise from or relate to the accrual of Sick Leave during periods of Short-Term Military Leave from January 1, 2001 through the date of Preliminary Approval, or (2) arise from or relate to employee or employer contributions to Class Members' 401(k) accounts arising from or related to periods of Short-Term Military Leave from January 1, 2001 through December 31, 2013, including those related to the failure to provide Class Members with information regarding their 401(k) accounts, Short-Term Military Leave, or Deemed Earnings to facilitate additional contributions to Class Members' 401(k) accounts based on Short-Term Military Leave.

*Id.*

## D.   Notice Process

### 1.   The Administrator Adhered to the Class Notice Requirements.

The parties have followed the Court-approved notice plan, as set forth in the Settlement and Preliminary Approval Order.  SSI FA Decl. ¶¶ 4-10; PA Order § V.  On January 4, 2019, which was 30 days after the Preliminary Approval Date of December 5, 2018, SSI sent the Class Notice and Claim Form to 1,970 members of the Settlement Class.  SSI FA Decl. ¶¶ 6-7.  An additional 29 members of the Settlement Class were sent the Notice on February 1, 2019.  *Id.* ¶ 8.  The Notice

explained the process for objecting to the Settlement and excluding oneself from the Settlement, along with contact information for Class Counsel and the Settlement Administrator.  *Id.* ¶ 6 & Ex. A.

The Settlement Administrator followed best practices to ensure that the Notice reached as many Class Members as feasible.  It disseminated the Notice to all Class Members by personal e-mail (if available) and by first class mail, for a total of 1,999 mailed Notices and 2,914 emailed Notices (because many Class Members had multiple email addresses).  SSI Decl. ¶¶ 6-8.[4]

In total, the Settlement Administrator responded to approximately 202 inquiries from Class Members about the Settlement and claims process, SSI FA Decl. ¶ 4, and Class Counsel responded to over 100 Class Member phone calls and approximately 50 Class Member emails.  PRF FA Decl. ¶ 5. Only one Class Member opted out of the Settlement, which he did because he believed that he had received all of the benefits to which he was entitled.  And only one Class Member objected to any part of the Settlement.  ECF No. 51.

### 2.    CAFA's Notice Requirements Were Satisfied.

On September 21, 2018, SWA satisfied its obligation to serve the appropriate settlement notice documents on the relevant federal and state attorneys general.  PRF FA Decl. ¶ 7.  The Parties have not received any comments from any state or federal officials.  *Id.*  The Final Approval hearing, set for June 20, 2019, is being held more than 90 days after the issuance of the Class Action Fairness Act ("CAFA") notice, such that the final approval order may be entered in accordance with CAFA's notice requirements, if the Court finds that all other requirements are met.  28 U.S.C. § 1715(d).

## III.    ARGUMENT

### A.    The Best Practicable Notice of Settlement Has Been Provided to the Class.

The notice here was the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and was provided "in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Notice is satisfactory "if it generally describes the

---

[4]    Of the Notices distributed, 74 mailed Notices and 28 emailed Notices were returned as undeliverable.  SSI FA Decl. ¶¶ 7, 10.  Of the mailed Notices returned as undeliverable, the Settlement Administrator performed address searches and located updated address information for 69 Class Members.  *Id.* ¶ 10.  The Settlement Administrator re-mailed Notices to those individuals.  *Id.* The Settlement Administrator also maintained a toll-free telephone number and a website that provided Class Members with additional information and allowed them to submit their forms online. *Id.* ¶¶ 4-5.

terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation and quotation marks omitted).  Notice mailed to each class member "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).  For any class certified under Rule 23(b)(3), the notice must inform class members "that the court will exclude from the class any member who requests exclusion," stating "the time and manner for requesting exclusion."  Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi).

As described above, the mailing and emailing of Notices to Class Members and the administration of the notice process ensured that the best notice practicable was sent to Class Members, as due process requires.  The parties and the Settlement Administrator have complied with the notice procedures of the Settlement, which the Court endorsed in its Preliminary Approval Order. *See* PA Order § V.A.  Because Class Members have been given a full and fair opportunity to consider the terms of the proposed Settlement Agreement and to make an informed decision on whether to participate, the Court should find that the notice was adequate for the purposes of satisfying due process. *See Ford v. CEC Entm't Inc.*, No. 14 Civ. 677, 2015 WL 11439033, at *3 (S.D. Cal. Dec. 14, 2015) (finding notice standards satisfied when claims administrator provided notice in accordance with the procedures previously approved by the court in its preliminary approval order).

## B.      Final Approval Is Appropriate Under Rule 23.

The touchstone for the final approval inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Staton*, 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal quotation marks omitted)). "Assessing a settlement proposal requires [a] court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026; *accord*

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:17-CV-03972-JD

1    *Guilbaud v. Sprint Nextel Corp.*, No. 13 Civ. No. 04357, 2016 WL 7826649, at *2 (N.D. Cal. Apr.

2    15, 2016).

3          Because further developments between preliminary and final approval, as well as the

4    comments of objectors, may reveal unfairness in the settlement, even a "rigorous inquiry" at the

5    preliminary approval stage does not "convert final review to a mere formality." *Cotter v. Lyft, Inc.*,

6    193 F. Supp. 3d 1030, 1036 (N.D. Cal. 2016).  Here, a rigorous review of the Settlement confirms

7    that it merits final approval, as evidenced by a consideration of the *Hanlon* factors.

8              **1.    Plaintiff Faced Substantial Obstacles to Recovery.**

9          The Parties have balanced "plaintiffs' expected recovery . . . against the value of the

10   settlement offer," taking into account "the relative strengths and weaknesses of the plaintiffs' case."

11   *Cotter v. Lyft, Inc*., 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal citation and quotation marks

12   omitted).  While Plaintiff believes that he can prevail on all issues, to recover full damages and relief,

13   he would have to surmount many or all of the following hurdles, and a loss on any of them could

14   potentially eliminate or significantly reduce the recovery: (1) SWA's Motion to Transfer Venue, ECF

15   No. 18, (2) a motion to dismiss for failure to state a claim, (3) class certification, (4) a summary

16   judgment motion, (5) liability at trial, (6) proof of damages, and (7) an appeal.

17         With respect to these issues, SWA would be expected to argue: (1) that STML is not

18   comparable to other forms of leave under USERRA, 38 U.S.C. § 4316(b), including union duty, jury

19   duty, and bereavement leave, and that accrual of sick leave is therefore not required during STML

20   periods; (2) that Class Members should not be eligible to receive matching 401(k) contributions from

21   SWA for USERRA make-up contributions that they did not make for periods of STML; (3) that Class

22   members cannot prove the counterfactual that they would have made such USERRA make-up

23   contributions if SWA had permitted them to do so; (4) that the pilots' union, which administered the

24   pilots' 401(k) plan during certain years, is liable for the Retirement Claims instead of SWA; or (5)

25   that the claims of Plaintiff and the Class Members are barred by laches and/or the statute of

26   limitations on USERRA claims, among other arguments.  Even if Plaintiff prevailed on all of these

27   issues, the Ninth Circuit or Supreme Court could have reversed and wiped out any victory.

28

NOTICE OF MOTION AND MOTION FOR
                                    FINAL APPROVAL OF SETTLEMENT
                                    CASE NO. 3:17-CV-03972-JD

In light of these obstacles, the $5.8 million payment, restoration of accrued sick leave benefits, and injunctive relief is fair, reasonable, and adequate.

### 2. The Risk, Expense, Complexity, and Delay of Further Litigation Support Final Approval.

Settlement now saves Class Members from the significant risk of no recovery, the cost of individual litigation, and the delay inherent in further litigation and possible appeals.  Plaintiff's claims in this action are highly complex, both procedurally and substantively.  Settling Class Members' claims saves the parties from conducting substantial additional discovery, including taking depositions and written discovery, and engaging in expert discovery and pre-trial motion practice. For these reasons, the law strongly favors settlements, particularly where complex class litigation is concerned.  *See Class Plaintiffs*, 955 F.2d at 1276 (describing the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").  This principle is particularly true where, as here, Plaintiff's claims present "novel legal questions." *Tumampos v. Cathay Pac. Airways LTD.*, No. 16 Civ. 6208, 2018 WL 5603702, at *5 (N.D. Cal. Sept. 21, 2018).

### 3. Plaintiff Faced a Risk of the Denial of Class Certification.

As noted above, Plaintiff would have risked an adverse decision as to Rule 23 class certification had this action proceeded to the class certification stage. Although Plaintiff believes that this case is well-suited for resolution on a class-wide basis, because it involves SWA's uniform policies and practices for calculating accrued sick leave and matching retirement contributions, SWA may have argued, for example, that individual issues predominate over questions that are common to the class.  *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

### 4. The Settlement Amount Fairly and Adequately Compensates the Class.

The settlement amount, as with any settlement, represents a compromise between receiving full damages and other relief on the one hand, and total defeat on the other.  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971)).  Given the risks

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:17-CV-03972-JD

and complexity of this litigation and the cost savings obtained through settlement, the compromise amount here is fair and adequate.

Here, Class Members will receive approximately 100% of the accrued sick leave that they claim they were denied from 2008 until December 5, 2018 and approximately 77% of the accrued sick leave that they claim they were denied from 2001 to 2007, with a value Plaintiff estimates at up to $13 million; more than half the value of the matching retirement contributions Plaintiff estimates Class Members could have received from October 2004 to December 2013; and approximately 17% of the value of the matching retirement contributions Class Members could have received for pre-October 2004 claims for which SWA's timeliness defenses were strong.  PRF Fee Decl. ¶¶ 45-46, 52.

This result compares very favorably with other settlements that courts have found to be within the range of reasonableness.  *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving employment class settlement as fair where the settlement fund represented between 11% and 27% of the total potential recovery); *Jones v. Agilysys, Inc.*, No. 12 Civ. 03516, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014) (finding a wage and hour settlement that constituted between 30% to 60% of recoverable damages to be a "tangible monetary benefit" for the class members); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 57-58 (E.D.N.Y. 2010) (settlement fund reasonable when it represented about 13% to 17% of maximum possible recovery); *Knight v. Red Door Salons, Inc.*, No. 08 Civ. 01520, 2009 WL 248367, *5 (N.D. Cal. Feb. 2, 2009) (50% recovery of possible damages in a wage and hour action was "substantial achievement on behalf of the class").  Indeed, as the Ninth Circuit has explained, even "a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair," particularly "where monetary relief is but one form of the requested by the plaintiffs."  *Officers for Justice*, 688 F.2d at 628.  Accordingly, the Settlement amount strongly favors granting final approval.

**5.**     **The Extent of Discovery Supports Settlement.**

Adequate discovery is required to justify any class settlement.  Here, Class Counsel engaged in extensive fact-gathering, informal and formal discovery, and detailed discussions of the legal and factual issues with SWA and its counsel before reaching the Settlement.  PRF Fee Decl. ¶¶ 34-37; *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (stating the touchstone of

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:17-CV-03972-JD

the analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery); PA Order § IV (finding Class Counsel "had adequately investigated Plaintiffs' claims and become familiar with their strengths and weaknesses").

### 6.    Counsel's Experience and Views Support Approval.

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).  Here, Class Counsel strongly endorse the Settlement as fair, adequate, and reasonable. Class Counsel are some of the most experienced and active attorneys in the nation in USERRA class actions, with extensive experience in prosecuting and litigating actions like this.  PRF Fee Decl. ¶¶ 4-22; *id*. Ex. 6 (Declaration of Thomas G. Jarrard); Ex. 7 (Declaration of Matt Crotty).  The fact that qualified and well-informed counsel endorse the Settlement as fair, reasonable, and adequate favors final approval of the Settlement.

### 7.    The Parties Participated in Arm's-Length Negotiations Before an Experienced Mediator.

A settlement is presumed fair if it was negotiated at arm's length by experienced, competent counsel equipped with enough information to act intelligently.  *See Hughes v. Microsoft Corp.*, No. 93 Civ. 178C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery.").  The Settlement is presumptively fair because it is "the result of arms-length negotiations between the Parties" with the "assistance of an experienced mediator." PA Order § IV.  The mediator here, former Judge Deborah Hankinson, is an experienced mediator with extensive experience settling complex cases.  PRF Fee Decl. ¶ 38.

### 8.    The Class Members Have Reacted Positively to the Settlement.

The reaction of the Class has been overwhelmingly positive, and strongly supports the conclusion that the Settlement is fair, adequate, and reasonable.  Only one Class Member opted out

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:17-CV-03972-JD

since he believes he received all of the benefits to which he is entitled (not because he plans to litigate his claims against SWA), and only one Class Member has filed an objection.  SSI FA Decl. ¶ 13 & Ex. B; ECF No. 51.  This is a particularly remarkable result given the high level of engagement and participation by Class Members.  More than a quarter of the Recognized and Potential Class Members submitted the optional Claim Form.  SSI FA Decl. ¶ 11.  And many other Class Members were not eligible to file a Claim Form because they did not work between 2001 and 2007 and will receive all of their benefits under the Settlement without filing a claim form.  *See* Settlement § VII.

Even when compared to settlements where a claim form must be filed to recover, the participation rate in this case is high.  *See Rodriguez*, 563 F.3d at 967 (court did not abuse its discretion in finding that a claims rate of about 14% was a favorable reaction to a settlement); *Munoz v. Giumarra Vineyards Corp.*, No. 09 Civ. 00703, 2017 WL 2665075, at *7 (E.D. Cal. June 21, 2017), *report and recommendation adopted*, 2017 WL 7371175 (E.D. Cal. Nov. 27, 2017) (settlement approved in employment action with approximately 28% participation rate); *Four in One Co., Inc. v. S.K. Foods, L.P.*, No. 08 Civ. 3017, 2014 WL 4078232, at *11 (E.D. Cal. Aug. 14, 2014) (stating that a 27.5% response rate is "in fact high compared to other response rates considered by the courts," and identifying cases where settlements were approved with only a 1% or 2% claims rate).

Furthermore, there was an unusually high level of engagement by Class Members.  The Settlement Administrator and Class Counsel received a combined total of more than 300 phone calls from Class Members, and worked with them to ensure that they understood the Settlement and the claims process.  SSI FA Decl. ¶ 4; PRF FA Decl. ¶ 5.  The Class Members asked thoughtful and detailed questions about the Settlement and its Plan of Allocation, and in many instances thanked Class Counsel for taking on this case and obtaining an excellent result for the Class.  PRF FA Decl. ¶ 6.  Given that the Class Members are sophisticated professionals—pilots who have served in the military—and generally have detailed knowledge of the terms and conditions of their employment, their support for the Settlement after closely scrutinizing it speaks volumes about its fairness.

Indeed, the exceptionally low rate of objections (0.05%) and exclusions (one Class Member who is fully satisfied with his benefits) strongly favors final approval.  Courts have found a favorable reaction to class settlements with far greater numbers of opt-outs or objectors.  *See, e.g.*, *Churchill*

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:17-CV-03972-JD

*Village, LLC*, 361 F.3d at 577 (finding that objections from only 45 class members out of 90,000 favored final approval); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (one opt-out and a "handful" of objectors out of 5,400 potential class members favored final approval); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").  For example, the D.C. Circuit affirmed final approval of a settlement when "15% of the class members objected," because that means "85% accepted the settlement" and the "paramount consideration" must be "the best interests of the class as a whole." *Thomas v. Albright*, 139 F.3d 227, 232 (D.C. Cir. 1998).  Thus, "a settlement can be fair even though a significant portion of the class and some of the named plaintiffs object to it." *Id.* (collecting cases from the Second, Fourth, Seventh and Fifth Circuits in which settlements were approved despite large portions of the class members objecting, including objections from 70% of class members in one case).

Here, the sole objection is concerned with alleged harassment and retaliation against servicemembers for taking military leave, and with the discounted rate for claims from the 2001 to 2007 time period.  ECF No. 51.  The objector's primary concern appears to be his belief that SWA harassed reservist employees.  The issue of harassment, however, is not relevant to the legal claims at issue in this case, and the Settlement does not release the objector's right to assert a discrimination or retaliation claim against his employer.  With respect to the discount, Class Members recovering sick leave for the 2001 to 2007 time period will receive an estimated 77% of the amount of sick leave Plaintiff estimates they are owed for the 2008 to 2013 time period, which is a discount of only 23%.  PRF Fee Decl. ¶ 46.  For Pension Claims, there is no discount for claims between October 2004 and 2007, but there is a two-thirds discount for pre-October 2004 claims.  These figures are discounted to reflect SWA's laches defense for the 2001 to 2007 time period, and to reflect that federal courts that have ruled on the issue have "generally determined that [a] four-year statute of limitations . . . applies to USERRA claims that accrued and expired before October 10, 2008." *Cabrera v. Perceptive Software, LLC*, 147 F. Supp. 3d 1247, 1250-52 (D. Kan. 2015).

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:17-CV-03972-JD

1        Particularly given the strength of SWA's defenses on these issues, the sole objection does not

2   provide a basis to deny final approval.  "Settlement is the offspring of compromise; the question

3   [courts] address is not whether the final product could be prettier, smarter or snazzier, but whether it

4   is fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027.  Here, as in *Hanlon*, "the fact

5   that the overwhelming majority of the class willingly approved the offer and stayed in the class

6   presents at least some objective positive commentary as to its fairness." *Id.*; *see also Fraley v.*

7   *Facebook, Inc*., 966 F. Supp. 2d 939, 945 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F.

8   App'x 594 (9th Cir. 2016) (holding that "in evaluating a settlement, the question is not whether it is

9   perfect, or even whether a better result could be envisioned").  Accordingly, the Court should grant

10  final approval to the Settlement.

11  **IV.    THE COURT SHOULD CERTIFY THE CLASS AS FINAL**

12       The Court's Preliminary Approval Order provisionally certified the Settlement Class

13  pursuant to Rule 23(a) and (b)(3).  PA Order § II.B.  The Court ruled that, for the purposes of

14  settlement, the Class meets Rule 23's requirements.  *Id*.  The Court also appointed the named

15  Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel.  *Id*. § III.

16       The Settlement has drawn a very favorable response from the Class.  For these reasons, and

17  the reasons set forth in Plaintiff's Preliminary Approval Motion and this motion, Class Counsel

18  respectfully submit that a final certification designation for the purposes of settlement is

19  appropriate, including appointment of the Class Representatives and Class Counsel.

20  **V.     CONCLUSION**

21       For the reasons stated above, the Court should grant Plaintiff's motion for final approval,

22  because the Settlement is fair, adequate, and reasonable.  The Settlement represents an outstanding

23  result for Class Members who claim that their USERRA rights were violated from 2001 to 2018.  It

24  provides an excellent level of monetary relief and programmatic changes, particularly given the

25  novelty of the claims and the major risks that Plaintiff and the Class faced in this litigation.

26  Moreover, the Settlement has received a strong endorsement from the Class Members, with only one

27  objection and a single opt out by a Class Member who was happy with the benefits he had already

28  received.

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:17-CV-03972-JD

1

2   Dated:  May 16, 2019

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

By: /s/ *Peter Romer-Friedman*
     Peter Romer-Friedman

Peter Romer-Friedman (*pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue, NW
Second Floor West Suite
Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile: (202) 847-4410
E-mail: prf@outtengolden.com

Jahan C. Sagafi (SB# 224887)
Rachel W. Dempsey (SB# 310424)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: rdempsey@outtengolden.com

Thomas G. Jarrard (*pro hac vice*)
LAW OFFICE OF THOMAS JARRARD PLLC
1020 N. Washington Street
Spokane, WA 99201
Telephone: (425) 239-7290
Facsimile: (509) 326-2932
Email: Tjarrard@att.net

Matthew Z. Crotty (*pro hac vice*)
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Avenue, Suite 404
Spokane, WA 99201
Telephone: (509) 850-7011
Email: matt@crottyandson.com

*Attorneys for Plaintiff and Settlement Class Members*

16